MELINDA H. MARTIN

*v.*

HUMPHREY H. MARTIN.

[Submitted December 22d, 1910.   Decided February 8th, 1911.]

Where a husband during a period of years abused his wife and then deserted her, the husband's misconduct relieved the wife from the duty of seeking his return, and she could obtain a divorce for desertion.

On petition and cross-petition for divorce.

*Messrs. Berry & Riggins,* for the petitioner.

*Mr. William T. Read* and *Mr. John G. Horner,* for the defendant.

LEAMING, V. C.

Both parties seek a divorce; each allege that the other is guilty of statutory desertion.   Petitioner, the wife, prays for a decree of divorce from bed and board; cross-petitioner, the husband, prays for a decree of divorce from the bond of matrimony.

I have reached the conclusion that petitioner is entitled to the relief sought by her.

At the hearing I entertained a doubt whether the separation of the parties had not been so essentially agreeable to both as to be operative as a bar to relief upon the part of either, for it is entirely manifest that both parties find their greater happiness in living apart, and that neither party has at any time sought to terminate the separation.   *Volenti non fit injuria.*   But further reflection has convinced me that the attitude and conduct of the husband has been such as to fully excuse the wife from either desiring or making effort to bring about a resumption of cohabitation.

The separation of the parties occurred in the spring of 1905. Prior to that time the parties had for many years, except during the summer months, occupied as their home a house owned by the wife in Manahawkin; during the summer the husband operated a club house which he owned, and the wife would live there with him and attend to the cooking and other necessary work. In the spring of 1905 the husband went to the club house, in accordance with his custom, but the wife failed to accompany him, and has since remained at her home. Since that time the husband has not returned to his wife or sought to have his wife come to him; nor has the wife made any effort to induce her husband to return or to permit her to go to him. These facts, standing alone, would not constitute either party an "obstinate" deserter of the other, for neither party resisted any desire or effort upon the part of the other to terminate the separation.

The testimony is in conflict as to what occurred at the time the husband left his home and went to his boat club in the spring of 1905. The wife and daughter have testified that the husband left without apprising his wife of his purpose, and that he had been gone a week or more before they ascertained where he was. He testified that he told his wife that he was going to the club house, and that if she wanted him to keep her she should come there. I think it of little importance, however, what the exact truth may be as to this, for, as already indicated, the controlling elements of the case are, in my judgment, to be found in the prior and subsequent conduct of the parties.

All harmonious relations of the parties were terminated years before the time of their separation. During all of that time the husband refused to even converse with his wife; he would speak to her only to communicate some necessary message or order, or to swear at her. The cause of this attitude of intense hostility upon the part of the husband toward his wife is in dispute; she says it arose from her objecting to his intimacy with a certain widow; he says it arose by reason of her cheating him out of $200 in a certain business transaction. The essential fact is admitted by him, however, that for many years prior to the separation he withdrew from her all the duties which a husband owes to a wife except the single duty of providing for her table and

occupying her house as his home. The wife testified that when the trouble first arose, her husband stated that he proposed to make her future life a "hell." This threat the husband did not deny. The evidence discloses that whether the husband, in fact, made such a threat, or not, he undoubtedly accomplished, and designedly accomplished, all that the wife says he threatened; it is indeed difficult to conceive how a home could be made more nearly a hell than this home was made by the conduct of the husband during the years that intervened between the time of their first trouble and their separation in 1905. As already stated, it is admitted that during that period the husband had continued to refuse to speak to his wife. He also admits that she had sought reconciliation and urged him to "make up," and reminded him that they had lived happily together and could do so again, and that he had absolutely refused to entertain any such suggestions, and had replied: "No, never." When asked, on cross-examination, "You didn't want to make up with her, did you?" he replied, referring to his claim that she had once cheated him out of $200, "I didn't want to make up with anybody like that." His whole testimony, as well as the testimony of petitioner and others, clearly discloses that whether his grievance against his wife first arose from the money transaction to which he referred, or from her objections to his relations to a widow, he had deliberately determined upon a course of conduct designed to make her life miserable, and that he thereafter stubbornly pursued that course of conduct to the utmost of his ability. The wife is manifestly a woman of considerable degree of refinement; the husband's language is coarse and frequently accompanied with oaths. That he habitually cursed his wife during the period referred to cannot be doubted. His wife testified that he called her or her daughter a "bitch." He testified that he never called any woman a bitch "when he was sober." The evidence discloses that the periods when he was sober were not over-frequent. That he frequently came home drunk and excessively abusive cannot be doubted; admittedly he was at times so drunk as to be helpless. During all of these years prior to their separation these conditions existed, during the winter months at the home at Manahawkin, and during the summer

months at the boat-club house, where the wife would follow her husband to attend to the cooking and rough work.

I am fully convinced that under such conditions there was no duty upon the part of the wife to follow her husband to the club house in the spring of 1905, and there again submit herself to the indignities which were necessarily to follow. Under the conditions then existing, any demand upon his part for her to share his home should have been accompanied by some assurance that she would be accorded the place of a wife in that home, or at the very least an assurance that she would not be subjected to a continuation of the indignities which had been imposed upon her during the preceding years. And it seems equally clear that when the husband returned to Manahawkin in the fall and failed to come to his home, it was no part of the duty of his wife to seek him or urge his return. His misconduct during the preceding years had been such as to render it impossible for her to wish his return, and had, in my judgment, been such as to exempt her from the duty to seek his return.

I am convinced that the case falls within the principles defined in *Wilson* v. *Wilson, 66 N. J. Eq. (21 Dick.) 237,* and the cases there cited. The husband has willfully and continuously separated himself from his wife for the statutory period; his desertion has not been obstinate in the sense that it has resisted effort upon the part of his wife to terminate it, but has been obstinate in the sense that his misconduct has rendered such an effort upon the part of his wife unreasonable and unnecessary.

The earning capacity of the husband is so limited that I am unable to advise an order for alimony in excess of $4 per week.

I will advise a perpetual decree of divorce from bed and board, and for alimony for the amount named. The decree may provide that in case of a reconciliation of the parties at any time after the decree is signed, application may be made for a revocation or suspension of the decree.